UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JERRY N. JONES, MARY FRANCES JONES, and OLGA MENYHART, <br><br> Plaintiffs, <br><br> vs. <br><br> HARRIS ASSOCIATES L.P., <br><br> Defendant. | 04-4184-CV-C-NKL |

## SUGGESTIONS IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER ACTION TO THE NORTHERN DISTRICT OF ILLINOIS

Pursuant to 28 U.S.C. § 1404(a) and the Court's Order of October 7, 2004, defendant Harris Associates, L.P. ("Harris") submits its suggestions in support of its motion to transfer this action to the Northern District of Illinois, Eastern Division.

## PRELIMINARY STATEMENT

Harris is the investment advisor to the mutual fund complex known as the Oakmark Family of Funds (the "Oakmark Funds"), based in Chicago, Illinois.[1] Harris, also located in Chicago, provides services to the funds pursuant to advisory agreements approved by the funds' board of trustees. This is an action under Section 36(b) of the Investment Company Act of 1940 ("ICA"), as amended, 15 U.S.C. §§ 80a-35(b), to recover allegedly "excessive" investment advisory fees paid by mutual funds to the advisor. The plaintiffs contend that investment advisory fees paid by certain Oakmark Funds to the defendant are too high, that the fees should

---

[1] As a matter of both industry practice and as recognized as a matter of law, the management and operations of a mutual fund are externalized and delegated to its investment advisor. Indeed, since the enactment of the Investment Company Act of 1940 and the Investment Advisers Act of 1940, the Supreme Court and the lower federal courts have recognized the legal separation of a mutual fund and its advisor, and have acknowledged this distinction as one of the principal purposes of the 1940 Acts. The statutes protect mutual fund investors by maintaining a fund's independence vis-à-vis the advisor. *See Burks v. Lasker*, 441 U.S. 471, 480-87 (1979); *see also* Investment Company Act, 15 U.S.C. §§ 80a-10(a)-(b), 80a-15(a)-(c).

be returned to the mutual funds in which the plaintiffs invest, and that the contracts between the funds and their advisor should be rescinded.

Although this case is prosecuted by individual holders of Oakmark Funds, at root – and by the express terms of the statute the plaintiffs invoke – the action posits a dispute between those mutual funds and their advisor. By its terms, Section 36(b) creates a federal *derivative* cause of action through which individual mutual fund shareholders can claim – "on behalf of" and for the benefit of a mutual fund – that fees paid by their fund to an advisor or distributor are excessive. The statutory text establishes a remedy *for* a mutual fund against its advisor/distributor, *about* the mutual fund's contractual payments, advanced *through* an individual stockholder. A Section 36(b) claim turns substantively – and inexorably – on the negotiation of advisory and other contracts between a mutual fund and its external managers. Individual mutual fund stockholders are merely the statutory instruments through which the fund advances an "excessive" fee claim: the stockholders have no role in the real underlying dispute, they have no personal evidence to offer, and they are ultimately incidental to the action's resolution.

As a dispute between a mutual fund and its advisor, then, to which the nominal plaintiffs are incidental, this case properly belongs in the forum where the contract at the heart of that dispute was negotiated, was performed, and is now challenged. Indeed, this case is brought in this district only by serendipity. Because the statute authorizes *any* mutual fund holder to advance a fund's claim, venue could properly exist in any forum in which a holder resides. The fact that mutual funds like the Oakmark Funds are sold in fifty states does not fairly root *anywhere* the funds' claims arising out of contracts bargained for, executed and performed *elsewhere*. A mutual fund with operations based in Illinois that negotiates a contract for advisory

services with an advisory firm with its principal place of business in Illinois, and whose services are performed exclusively in Illinois, simply should not expect that the integrity of the contract will be scrutinized somewhere else – merely because a shareholder in the fund happens to live in another state. The validity of a contract so negotiated and performed should not be decided in a jurisdiction chosen only by chance. This principle has been recognized repeatedly by courts that have transferred actions like this one – including virtually identical claims initiated by the same plaintiffs' counsel pressing this action – to the district courts where the mutual funds and their advisors have their principal place of business.

For those reasons, and as set forth below, the Court should transfer this action to the Northern District of Illinois under Section 1404(a). Each of the factors that Section 1404(a) requires a court to consider "in the interests of justice" and "for the convenience of the parties and witnesses" is satisfied here.

## BACKGROUND

**1.** **The Parties**

Defendant Harris is the investment advisor for each of the Oakmark Funds, a group of six mutual funds based in Chicago, Illinois. Harris is a Delaware limited partnership with its principal place of business in Chicago as well. *See* Declaration of Ann W. Regan, attached as Ex. A ("Regan Decl."), at ¶ 2. Each of the Oakmark Funds is a series of Harris Associates Investment Trust, a Massachusetts business trust. *See id.* at ¶ 3. The operations of each of the Oakmark Funds are overseen by the board of trustees of Harris Associates Investment Trust. *See id.* at ¶ 4. Harris serves as investment advisor to each of the Oakmark Funds pursuant to a separate advisory agreement negotiated with each fund and approved by the board of trustees. *See id.* at ¶¶ 2, 7, 9. The services provided by Harris under the agreements include not only the

selection of investments for the funds' portfolios (the apparent focus of plaintiffs' complaint in this action), but also a variety of other management functions necessary to the operations of the funds. *See id.* at ¶ 7.

Plaintiffs Jerry N. Jones and Mary Frances Jones allegedly reside in Columbia, Missouri and own an unspecified number of shares in the Oakmark Equity and Income Fund and the Oakmark Global Fund. *See* Complaint, attached as Ex. B, at ¶ 19. Plaintiff Olga Menyhart allegedly resides in Tampa, Florida and owns an unspecified number of shares in the Oakmark Fund and the Oakmark International Fund. *See id.* at ¶ 20. Together the plaintiffs purport to bring an action on behalf of these four Oakmark Funds alleging violations by Harris of Section 36(b) of the ICA and seeking, *inter alia*, an award of damages including "all fees" paid by the plaintiffs and the Oakmark Funds to the defendants "for all periods not precluded by any applicable statute of limitation." *See id.* at ¶¶ 1, 59(c).

**2. <u>Section 36(b) of the ICA and the Nature of this Action</u>**

Section 36(b) of the ICA, the sole basis for the plaintiffs' claims, imposes a statutory fiduciary duty on mutual fund investment advisors in connection with their receipt of fees from the mutual funds they manage: "the investment adviser of a registered investment company [*i.e.*, a mutual fund] shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services . . . paid by such registered investment company." ICA § 36(b). The statute further provides the funds' shareholders a right to bring a derivative action against the advisor, on behalf of the funds, for alleged breaches of that fiduciary duty:

> An action may be brought under this subsection by the Commission, or by a security holder of such registered investment company *on behalf of such company*, against such investment adviser . . . for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person.

*Id.* (emphasis added). Indeed, the plaintiffs expressly aver in their complaint that this is a "derivative" action brought "for the use and benefit of" the Oakmark Funds. Complaint at 1, ¶ 1. As such, the substance of this action is a dispute between the Oakmark Funds and their advisor, which is merely being prosecuted by the shareholders on the funds' behalf. The allegedly excessive fees in question were paid by the funds to the advisor, and the remedy against the advisor belongs to the funds. The complaint confirms that the plaintiffs seek "to recover *for the Funds* the total fees charged by Defendant . . . ." Complaint ¶ 16 (emphasis added). Under this statute, the plaintiffs' roles are nominal; the stockholders are incidental because they have no real role in the underlying dispute.[2] Indeed, the complaint alleges no involvement of any kind by the plaintiffs in the events that form the core of the case – the negotiation and approval of the advisory contracts between the funds and the advisor, the performance of services under those contracts, and the payment of fees for those services. All of these relevant events occurred in Chicago, Illinois and were carried out by individuals based there.

## ARGUMENT

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (1996). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988), quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). In addition to considering the "parties' private

---

[2] Plaintiffs' complaint can be contrasted with a traditional shareholder derivative suit alleging that plaintiff and others bought or sold a company's securities on the basis of misleading information from the company – a type of action in which (unlike here) the plaintiffs' securities transactions and the information on which the shareholder relied in undertaking such transactions are directly implicated. The sole question to be determined here is whether Harris' investment advisory fees were so excessive that they violated the fiduciary duty the advisor owes to the funds – a question that can be answered wholly apart from any evidence of the plaintiffs' knowledge or conduct.

expression of their venue preferences," the court must also "balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'interest of justice.'" *Id.* "No empirical formula will yield the determinations concerning 'convenience' and 'interest of justice' required by § 1404(a)," but rather the Court has discretion to balance the factors on a case-by-case basis. *Leverage Leasing Co. v. Lincoln Ins. Co.*, No. 91-0558-CV-W-2, 1991 WL 626752, *4 (W.D.Mo. Sept. 27, 1991), citing *Stewart Org., Inc.*, 487 U.S. at 29.[3]

## I. THE CONVENIENCE OF THE WITNESSES AND PARTIES FAVORS TRANSFER TO THE NORTHERN DISTRICT OF ILLINOIS, THE SITUS OF THE CHALLENGED CONTRACT AND ALL RELEVANT CONDUCT

Given the true nature of this action as a dispute between Chicago-based funds and their Chicago-based advisor, the "private" interests considered by courts in analyzing transfer motions – the relative convenience of each forum to the witnesses and parties – strongly favor transfer to the Northern District of Illinois. Indeed, virtually all of the documents and witnesses relating in any way to plaintiffs' claims can be found in the proposed transferee district, and none can be found in the Western District of Missouri. Under circumstances identical to these, courts repeatedly have transferred claims to the districts housing the mutual funds and advisors whose fees are being challenged.

### A. **Location of Important Witnesses**

---

[3] As an initial matter, the Court must determine under Section 1404(a) whether the would-be transferee district is one in which the action "might have been brought" – that is, that jurisdiction and venue are proper in the proposed transferee district. *Leverage Leasing Co. v. Lincoln Ins. Co.*, 1991 WL 626752, *1. The Northern District of Illinois, Eastern Division has personal jurisdiction over Harris because Harris has its principal place of business in that division. *See* Regan Decl. ¶ 3. Venue is proper in the Northern District of Illinois for at least three reasons: (i) a business entity is deemed to reside in any district in which it does business; (ii) a substantial part of the events that gave rise to the claims in plaintiff's complaint occurred there; and (iii) a business entity is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time of commencement of the action. *See* 28 U.S.C. § 1391(b), (c). Thus, the Northern District of Illinois, Eastern Division, is a district in which the claims against Harris "might have been brought." *See* 28 U.S.C. § 1404(a).

"Convenience of the witnesses is a primary, if not the most important, factor in considering a motion under § 1404(a)." *Enterprise Rent-a-Car v. U-Haul Int'l, Inc.*, 327 F. Supp.2d 1032, 1045 (E.D. Mo. 2004), citing *May Dept. Stores Co. v. Wilansky*, 900 F.Supp. 1154, 1165 (E.D. Mo. 1995). In analyzing convenience of the witnesses, "[t]he court must consider the convenience to the party and non-party witnesses, the number of potential witnesses located near or in the suggested forum, and the nature and quality of such witnesses' testimony in relation to the issues in the case." *Preston v. Missouri-Nebraska Exp., Inc.*, No. 91-0056-CV-W-6, 1991 WL 626751, * 1 (W.D. Mo. Oct. 16, 1991). Not just the number of witnesses located near the suggested forum, but "'the nature and quality of their testimony in relationship to the issues of the case' must [also] be considered" by the Court. *Midwest Mechanical Contractors, Inc. v. Tampa Constrs., Inc.*, 659 F.Supp. 526, 532 (W.D. Mo. 1987) (quoting *Houk v. Kimberly-Clark Corp.,* 613 F.Supp. 923, 928 (W.D. Mo. 1985)).

The claims asserted by the plaintiffs on the funds' behalf are based solely on the alleged conduct of the employees and officers of Harris and that of the board of trustees of the four named Oakmark Funds. Specifically, the plaintiffs allege that the fees paid by the funds to Harris for services provided by Harris, pursuant to a contract approved by the trustees, were excessive. No conduct or knowledge of the plaintiffs is relevant to the disposition of these allegations. Thus, the plaintiffs make no allegations relating to the circumstances surrounding their purchase of Oakmark Funds shares or their interactions with the defendants, as they are irrelevant to plaintiffs' theories of liability. Instead, the central factual issues as to which testimony and documentary evidence will be necessary are the circumstances surrounding the approval by the board of trustees of the advisory agreements; the information provided by the defendant's officers and employees to the boards in connection with such approval; the nature,

value and cost of the services provided by the defendant to the Funds; and the fees paid by the Funds to the defendant.

Most, if not all, of the witnesses with knowledge of these relevant issues will be (i) the funds' trustees who approved the challenged agreements and fees and/or (ii) Harris officers and employees who provide the services under the agreements, calculate the fees for those services, and provide the information considered by the board in approving the agreements. *See* Regan Decl. ¶¶ 6, 13-17. Virtually all of these potential witnesses live and work in the Chicago area, and none of them can be found in Missouri.

*Board of Trustees.* The operations of the Oakmark Funds are overseen by the board of trustees of Harris Associates Investment Trust. *See* Regan Decl. ¶ 4. The board is composed of ten members, eight of whom are independent (*i.e.*, not affiliated with Harris). *See id.* Nine of the ten trustees, including all of the independent trustees, reside and/or work in or near Chicago, and none of trustees resides or works in Missouri. *See id.* One non-independent trustee resides and works in or near Boston, Massachusetts, but regularly travels to Chicago for board meetings and other business. *See id.* The board normally meets in Chicago and has never met anywhere in the Western District of Missouri. *See id.*

*Officers and Employees.* Numerous officers and employees of Harris have potentially relevant knowledge about the issues raised by plaintiffs' complaint. All of the employees of Harris live and work in the Chicago area. *See* Regan Decl. ¶ 13. These potential witnesses include – but are by no means limited to – the following:

- Officers and employees with knowledge about the board's approval of the advisory agreements include John R. Raitt, President and Chief Executive Officer; Kristi L. Rowsell, Chief Financial Officer; Janet L. Reali, General Counsel; and Ann W. Regan. *See* Regan Decl. ¶ 14.

- Officers and employees with knowledge about the services provided by Harris

under the advisory agreements include John R. Raitt, President and Chief Executive Officer; Kristi L. Rowsell, Chief Financial Officer; John J. Kane, Manager of Mutual Fund and Institutional Services; William C. Nygren, Portfolio Manager of The Oakmark Fund; Kevin G. Grant, Portfolio Manager of The Oakmark Fund; David G. Herro, Portfolio Manager of The Oakmark Fund; Michael J. Welsh, Portfolio Manager of The Oakmark International Fund and The Oakmark Global Fund; Clyde S. McGregor, Portfolio Manager of The Oakmark Equity and Income Fund and The Oakmark Global Fund; Edward A. Studzinski, Portfolio Manager of The Oakmark Equity and Income Fund; and Ann W. Regan. *See id.* at ¶ 15.

- Officers and employees with knowledge about the cost and profitability of the services provided by Harris include John R. Raitt, President and Chief Executive Officer, and Kristi L. Rowsell, Chief Financial Officer. *See id.* at ¶ 16.

- Officers and employees with knowledge about the fees paid by the funds to Harris include Kristi L. Rowsell, Chief Financial Officer. *See id.* at ¶ 17.

*Plaintiffs.* Although two of the three plaintiffs reside in Missouri, the narrow scope of the potentially relevant knowledge that they possess – namely, information about their status as shareholders of the Oakmark Funds – underscores that their testimony is of slight importance for purposes of transfer. The plaintiffs do not allege in the complaint that they have any knowledge of the central issues in this case, and thus are not material witnesses for purposes of this motion to transfer. *See Nelson v. AIM Advisors, Inc.*, No. 01-CV-0282-MJR, 2002 WL 442189 at *4, 2002 U.S. Dist. LEXIS 5101, [2002 Transfer Binder], FED. SEC. L. REP., (CCH), ¶ 91,725 (S.D. Ill. March 8, 2002) (holding in the context of an alleged violation of Section 36(b) of the ICA that where no plaintiff has interacted with the defendant in any direct way, plaintiffs who are shareholders of a mutual fund are not material witnesses). To the extent that the plaintiffs do have any relevant knowledge, Harris will agree to take their depositions in their respective home states or at a place convenient for them if the present motion is granted.

**B.    Location of Relevant Documents**

Harris has its principal place of business in Chicago, Illinois. *See* Regan Decl. ¶ 2. All

of its employees work in the Chicago area. *See id.* at ¶ 13. Virtually all of the documents maintained by Harris relating to the plaintiffs' claims (with the exception of those documents publicly filed with the Securities and Exchange Commission or maintained by outside counsel) are maintained at offices in Chicago. *See id.* at ¶¶ 10-12, 18. Harris does not maintain any relevant documents in Missouri. *See id.*

Any documents retained by the plaintiffs are likely to be either publicly available, already in the defendant's possession in Illinois, or both. By contrast, the documentary evidence in Harris' possession in Illinois includes defendant's internal business records that are not to be found anywhere outside of Illinois. *See id.*

### C. **Plaintiffs' Choice of Forum**

The fact that the Western District of Missouri was the plaintiff's choice of forum is entitled to little, if any, weight in this instance. Where the forum chosen by the plaintiffs "has little contact with the transaction at issue," no great deference is due to the plaintiff's choice of forum.[4] *Preston,* 1991 WL 626751 at * 2, citing *Midwest Mechanical Contractors, Inc.,* 659 F. Supp. at 532. The transaction underlying the plaintiffs' complaint – the alleged receipt of excessive advisory fees by the defendant – occurred, if anywhere, at Harris' principal place of business, which is in Illinois. The plaintiffs have not alleged one event relevant to their complaint that purportedly occurred in the Western District of Missouri. Thus, the plaintiffs' choice of forum should be disregarded.

---

[4] The fact that some of plaintiffs' attorneys are located in the Western District of Missouri is of no moment either. *See Invivo Research, Inc. v. Magnetic Resonance Equipment Corp.,* 119 F. Supp.2d 433, 438 (S.D.N.Y. 2000) ("[T]he convenience of counsel is not an appropriate factor to consider on a motion to transfer."); *see also Leverage Leasing Co. v. Lincoln Ins. Co.,* 1991 WL 626752, *3 (finding that consideration of whether the forum is convenient for the attorneys is a "fairly insignificant factor"), citing *Moran v. Vermeer Mfg. Co.,* 498 F. Supp. 1274, 1281 (W.D. Mo. 1980). In any event, plaintiffs are represented in this action by a group of law firms, only two of which are in Missouri – with the others located in Florida and South Carolina.

In addition, the plaintiffs' choice of forum is entitled to little deference where any number of potential plaintiffs, situated in all fifty states, could have brought the action. The plaintiffs in this derivative suit act on behalf of the funds. All fund shareholders are equally entitled to make a claim pursuant to § 36(b), and any recovery will go to the fund, rather than the plaintiffs. Thus, any one of the hundreds of thousands of Oakmark Fund stockholders could have brought this suit. *See* Regan Decl. ¶ 3. The Supreme Court has noted that where "there are hundreds of potential plaintiffs, . . . the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947).

### D. Defendant's Connections to this District

Harris has no connection to the Western District of Missouri that is relevant either to plaintiffs' claims or to this motion. Plaintiffs allege no action taken by Harris within this district relating to their claims, nor could they. The only activity of the Oakmark Funds that takes place in the Western District of Missouri is the processing of clients' service transactions by a sub-transfer agent of the funds. *See* Regan Decl. ¶ 19. This sub-transfer agent, Boston Financial Data Services ("BFDS") is located in Kansas City, Missouri and maintains a contractual relationship with the Oakmark Funds' transfer agent, CDC IXIS Asset Management Services, Inc. ("CIS"). *See id.* BFDS performs purely administrative functions, such as processing orders for purchases and sales of fund shares received by mail, shareholder correspondence, and cash management services. *See id.* BFDS does not have a corporate relationship with Harris. *See id.* None of the functions performed by BFDS or CIS is relevant to the subject matter of this lawsuit. The advisory agreements between Harris and the Oakmark Funds – the sole focus of the plaintiffs' allegations – are wholly separate and apart from the transfer agency agreements

pursuant to which CIS and BFDS provide services to the funds. *See id.*

### E. ICA § 36(b) Cases Are Routinely Transferred

The circumstances presented by the current motion are far from unique. In cases presenting virtually identical facts – Section 36(b) excessive fee claims brought in a district where shareholders resided, rather than in the locale of the relevant conduct – courts have routinely transferred the claims to the district where the funds and advisor are located.

For example, the claims asserted in this action mirror those brought by the same plaintiffs' counsel in *Nelson v. AIM Advisors, Inc.* in the Southern District of Illinois in 2001.[5] *See Nelson,* 2002 WL 442189. In *Nelson*, shareholders of twenty-four different mutual fund complexes brought claims pursuant to Section 36(b) of the ICA to recover ostensibly "excessive" fees paid by those funds to their respective investment advisors and distributors. The defendants moved to sever the claims as to each complex and to transfer the claims against each complex to the district where the funds and their respective advisors were headquartered. After carefully analyzing the factors under 28 U.S.C. § 1404(a), the court granted the motions and ordered the claims severed and transferred. *See id.* At the outset, the court determined that the plaintiffs' choice of forum was "irrelevant." *Id.* The court found that "although there are certainly putative class members in the Southern District of Illinois, as there are nationwide, there is no special relation between this community and the alleged occurrences. Therefore, there is no specific desire or need to resolve this controversy in this district as compared to the clearly more convenient transferee districts." *See id.* at *5. Rather, and in view of the fact that all of the transactions, documents and witnesses were to be found in the district where each mutual fund

---

[5] The plaintiffs in *Nelson* were represented by the same lawyers from South Carolina and Florida who, along with The Popham Law Firm, PC and The Bertram Law Office, LLC, represent the plaintiffs in this action.

complex was headquartered, the *Nelson* court severed the case into twenty-four separate actions, and transferred each resulting case to the district where the relevant fund family was based. A copy of the court's decision is attached hereto at Tab C for the Court's convenience.[6]

Other courts considering transfer motions in cases raising similar claims in a derivative posture repeatedly have transferred such cases to the districts of the defendants' principal place of business where the challenged conduct actually occurred. *See e.g.*, *Abramson v. INA Capital Mgmt. Corp.*, 459 F. Supp. 917 (E.D.N.Y. 1978) (transferring a derivative case brought for alleged violations of the ICA, including excessive advisory fees, from the Eastern District of New York to the Eastern District of Pennsylvania); *Stanley v. Carret*, FED. SEC. L. REP. (*CCH*) ¶ 92,952, 1971 WL 244 (S.D.N.Y. Feb. 16, 1971) (transferring a derivative suit alleging violations of the ICA, including excessive advisory fees, from the Southern District of New York to the District of Massachusetts); *see also Ackert v. Ausman*, 198 F. Supp. 538 (S.D.N.Y. 1961) (transferring a derivative and representative claim brought under the ICA for violation of fiduciary duty from the Southern District of New York to the District of Minnesota). The same result is appropriate here.

## II. THE JUDICIAL INTEREST IN RESOLVING CONTROVERSIES WHERE THEY OCCUR FAVORS TRANSFER TO THE DISTRICT WHERE THE DISPUTED CONTRACTS WERE NEGOTIATED AND PERFORMED

### A. Chicago is the Location of All Operative Facts

Although courts have considered many factors in the "interest of justice," the main factor to be considered by the Court relevant to *this* controversy is the location of the operative facts.

---

[6] As recently as this year, the same plaintiffs' counsel brought the same Section 36(b) claims against a mutual fund advisor in the District of Arizona, where certain of the shareholder plaintiffs resided. In that case, plaintiffs stipulated to the transfer of the action to the District of Minnesota, where the funds at issue and their advisor are located. A copy of the court's order granting the parties' stipulated motion for transfer is attached hereto at Tab D for the Court's convenience.

*See* 15 FED. PRAC. & PROC. JURIS.2D § 3854, Pocket Part, at 470 (2004) ("[C]ourts have noted that the administration of justice is served more efficiently when action is litigated in the forum that more clearly encompasses the locus of operative facts and consequently have considered the desirability of resolving controversies in their locales during Section 1404(a) analysis."); *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 696 (8th Cir. 1997) (listing some factors traditionally considered by courts in conducting a Section 1404(a) analysis). There can be no question that the Northern District of Illinois, Eastern Division, possesses a more significant "local interest" than the Western District of Missouri.

Virtually all of the conduct relevant to the plaintiffs' claims occurred in Illinois:

- The negotiation and execution of the advisory agreements. *See* Regan Decl. ¶ 8.

- The approval by the board of the advisory agreements. *See id.* at ¶ 9.

- The provision of advisory services by Harris pursuant to the advisory agreements. *See id.* at ¶ 11.

- The calculation of advisory fees pursuant to the agreements. *See id.* at ¶ 12.

By contrast, the plaintiffs allege no conduct or event relevant to their claims that occurred in the Western District of Missouri. The complaint alleges where the plaintiffs reside and that they are shareholders in various Oakmark Funds but avers no specific facts about the plaintiffs' investment in any of the funds. For instance, the complaint does not allege that the plaintiffs interacted in any way with Harris or any of its officers, directors or employees. The complaint merely alleges that venue is proper because "[d]efendant is an inhabitant of or transacts business in this district, [d]efendant resides in this district, a substantial part of the events or omissions that give rise to [p]laintiffs' claims occurred in this district, and/or [d]efendant may be found in this district." Compl. ¶ 3. But that is mere boilerplate. Nothing about the facts that the complaint alleges to establish jurisdiction or venue is relevant to the underlying dispute; it is the

KC01DOCS\703886.1                               14

Case 2:04-cv-04184-NKL   Document 22   Filed 10/11/04   Page 14 of 17

nature of that underlying dispute that should govern the question of transfer under Section 1404(a).

### B. Other Factors to Balance in the "Interest of Justice"

Other factors traditionally considered in the "interest of justice" are either neutral or weigh in favor of transfer to the Northern District of Illinois. *See Terra Int'l, Inc.*, 119 F.3d at 696 (listing factors traditionally considered by courts when balancing the "interest of justice"). The docket congestion in the two forums is relatively equal: in 2003 the median time from filing to disposition of civil cases was 10.3 months in this district and 5.5 months in the Northern District of Illinois, and the median time from filing to trial of civil cases was 21 months here, compared with 26 months in Northern Illinois. *See Federal Court Management Statistics*, District Courts (for period ending September 30, 2003) (excerpt of Judicial Business of the United States Court 2003, http://www.uscourts.gov/cgi-bin/cmsd2003.pl) (attached hereto as Ex. E). As the defendant has its principal place of business in Illinois, it would be easier for the plaintiffs to enforce a judgment against defendant in the Illinois forum. This case does not present any issues of Missouri law that this Court would be particularly well-suited to resolve. Rather, plaintiffs' claims raise only questions of federal statutory law under the ICA – which both district courts are certainly capable of resolving.

On balance, like the private factors, all of the factors of public interest favor transfer to the Northern District of Illinois, Eastern Division.

### CONCLUSION

For all of the foregoing reasons, defendant Harris respectfully requests that this Court enter an order pursuant to 28 U.S.C. § 1404(a) transferring this action to the United States District Court for the Northern District of Illinois, Eastern Division.

Respectfully submitted,

BRYAN CAVE LLP

By: /s/ Lynn S. McCreary
   Lynn McCreary MO Bar #46629
   BRYAN CAVE LLP
   1200 Main Street, Suite 3500
   Kansas City, MO 64105
   Phone: 816-374-3200
   Fax: 816-374-3300

   John D. Donovan, Jr.
   Robert A. Skinner
   Rosanne E. Felicello
   ROPES & GRAY, LLP
   One International Place
   Boston, Massachusetts 02110

ATTORNEYS FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

       I hereby certify that on the 11th day of October, 2004, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Audrey B. Rauchway
Becky Ferrell-Anton
Guy M. Burns
Jonathan S. Coleman
Johnson, Pope, Bokor, Ruppel & Burns, LLP
100 N. Tampa Street
Suite 1800
Tampa, FL   33602

James C. Bradley
Michael J. Brickman
Nina H. Fields
Richardson, Patrick, Westbrook & Brickman, LLC
174 East Bay Street
Suite 100
Charleston, SC   29401

William Dirk Vandever
The Popham Law Firm, PC
323 W. 8th Street
Suite 200
Kansas City, MO   64105

and a copy by first class mail upon:

Timothy L. Sifers, Esq.
The Bertram Law Office, LLC
9229 Ward Parkway, Suite 107
Kansas City, MO   64114

                                                /s/  Lynn S. McCreary