UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JERRY N. JONES, MARY FRANCES JONES, and OLGA MENYHART, | ) ) |
| Plaintiffs, | ) 04-4184-CV-C-NKL ) ) |
| vs. | ) ) |
| HARRIS ASSOCIATES L.P., | ) ) |
| Defendant. | ) ) ) |

## SUGGESTIONS IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

Lynn S. McCreary    #46629
Fred L. Sgroi       #35146
BRYAN CAVE LLP
1200 Main Street, Suite 3500
Kansas City, MO 64105
816-374-3208

John D. Donovan, Jr.
Robert A. Skinner
Rosanne E. Felicello
ROPES & GRAY, LLP
One International Place
Boston, Massachusetts 02110
617-951-7000

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND ................................................................................................ 2

ARGUMENT..................................................................................................... 4

I.  THE COMPLAINT FAILS TO ALLEGE FACTS SPECIFIC TO HARRIS
    AND THE OAKMARK FUNDS THAT MEET THE PLEADING
    STANDARD FOR A CLAIM OF EXCESSIVE FEES UNDER
    SECTION 36(B) OF THE ICA

    A. The Pleading Standard For Section 36(b) Actions .............................. 4

    B. Allegations Regarding the Industry as a Whole Are Insufficient to
       Establish Disproportionality Between Fees Charged and Services
       Rendered by This Adviser ................................................................. 7

    C. The Complaint's Few Allegations Specific to Harris Are Insufficient
       to Raise an Inference of "Disproportionality" or the Absence of
       Arm's-Length Bargaining ................................................................. 9

    D. Pleading Legal Conclusions or Legal Standards is Insufficient
       to Make Out a Cognizable Case Under Section 36(b) ....................... 10

        1. Conclusory Allegations of Excessiveness or
           Disproportionality Are Insufficient ........................................... 11

        2. Recitation of the *Gartenberg* "Factors" is Insufficient ............... 11

II. THE COMPLAINT'S CLAIM TO AN "EXCESS PROFITS" REMEDY
    AND TO RESCISSION OF THE CONTRACT SHOULD BE STRICKEN
    BECAUSE THEY ARE NOT PROVIDED FOR BY SECTION 36(b) ................. 14

CONCLUSION.................................................................................................... 16

Case 2:04-cv-04184-NKL   Document 31   Filed 11/01/04   Page 2 of 22

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Burks v. Lasker*, 441 U.S. 471 (1979)..............................................................................1

*DM Research, Inc. v. College of America Pathologists*,
170 F.3d 53 (1st Cir. 1999)......................................................................................11

*Gartenberg v. Merrill Lynch Asset Management, Inc.*,
694 F.2d 923 (2d Cir. 1982).................................................................................1, 5

*Green v. Fund Asset Mgmt., L.P.*,
286 F. 682 (3d Cir. 2002)........................................................................................15

*Krantz v. Prudential Inv. Fund Management LLC*,
305 F.3d 140 (3d Cir. 2002)..........................................................................6, 7, 11

*Lawline v. American Bar Ass'n*,
738 F.Supp. 288 (N.D. Ill. 1990) ..............................................................................7

*Mattes v. ABC Plastics, Inc.*, 323 F.3d 695 (8th Cir. 2003) ...............................11

*Migdal v. Rowe Price-Fleming Int'l., Inc.*,
248 F.3d 321 (4th Cir. 2001) ........................................................................6, 8, 11

*Millenco L.P. v. Mevc Advisors, Inc.*,
No. CIV. 02-142-JJF, 2002 WL 31051604 (D. Del. Aug. 21, 2002) ...........6, 12

*Parnes v. Gateway 2000, Inc.*, 122 F.3d 539 (8th Cir. 1997) .............................3

*Strougo v. BEA Assocs.*, 188 F.Supp. 2d 373 (S.D.N.Y. 2002)........................10

*Wiles v. Capital Indem. Corp.*, 280 F.3d 868 (8th Cir. 2002)............................11

*Yampolsky v. Morgan Stanley Inv. Advisers, Inc.*, No. 03 Civ. 5710 (RO)
& No. 03 Civ. 5896 (RO), 2004 WL 1065533 (S.D.N.Y. May 12, 2004) ...........6, 7, 8, 11

## FEDERAL STATUTES

Investment Company Act of 1940, 15 U.S.C. §§ 80a-10(a)-(b), 80a-15(a)-(c) ..................1

Investment Company Act of 1940, 15 U.S.C. §§ 80a-35(b)............................................1, 5

## OTHER

5A Charles Alan Wright & Arthur R. Miller, Federal Practice and
Procedure § 1357 (2d ed. 1990) ..................................................................................7

**PRELIMINARY STATEMENT**

This is an action under Section 36(b) of the Investment Company Act of 1940 ("ICA"), 15 U.S.C. §§ 80a-35(b), to recover allegedly "excessive" fees paid by four mutual funds to their investment adviser.[1] The plaintiff shareholders in four Oakmark Funds contend that the investment advisory fees paid by those funds to Harris Associates L.P. ("Harris") are too high, that the "excess" portion should be returned to the funds, and that the advisory contracts should be rescinded.

The well-developed jurisprudence under Section 36(b) establishes a rubric for examining "excess" investment advisory fee claims. The seminal case of *Gartenberg v. Merrill Lynch Asset Management, Inc.*, 694 F.2d 923 (2d Cir. 1982), erects six "factors" to aid analysis of the ultimate issue a Section 36(b) case poses: whether facts specific to the adviser and funds in question demonstrate that the defendant's fees are so disproportionately large that they bear no reasonable relationship to the services rendered such that they could not have been the product of arm's-length bargaining. But *Gartenberg's analytical* rubric is not a *pleading* standard. It is not enough simply to invoke the framework's "factors" and assert they are not met. Factually empty *conclusions* about *Gartenberg's* "factors" do not substitute for fund- or adviser-specific *facts* upon which to draw the required inference of disproportionality between fees and services, or the essential conclusion that the advisory contract could not have been fairly bargained.

But that is all the plaintiffs' Complaint supplies. The pleading summons up the

---

[1] As a matter of industry practice and as recognized as a matter of law, the management and operations of a mutual fund are externalized and contractually delegated to its investment adviser. Since the enactment of the Investment Company Act of 1940 and the Investment Advisers Act of 1940, the Supreme Court and the lower federal courts have recognized the legal separation of a mutual fund and its adviser, and have acknowledged this distinction as one of the principal purposes of the 1940 Acts. The statutes protect mutual fund investors by maintaining a fund's independence from its adviser. *See Burks v. Lasker*, 441 U.S. 471, 480-87 (1979); Investment Company Act, 15 U.S.C. §§ 80a-10(a)-(b), 80a-15(a)-(c).

KC01 706672.1

*Gartenberg* "factors" and advances the conclusion they are not satisfied. But it conspicuously omits any factual allegation upon which to measure disproportionality, or the absence of arm's-length bargaining, whether under the *Gartenberg* "factors" or otherwise. The Complaint is silent about the value of the services that Harris provides to the Oakmark Funds, and it never mentions the relationship between those services and the fees the funds pay to Harris for them.

Instead, the Complaint grounds its conclusion of "excessive" fees paid by the Oakmark Funds on two self-evidently insufficient bases. First, the pleading criticizes the size of advisory fees charged generally in the mutual fund industry. But broad assertions about what *competitors* of Harris and the Oakmark Funds do says nothing about the relationship between Harris and the Oakmark Funds, just as it says nothing about the value of the services rendered for these specific funds by this specific adviser. Second, the Complaint compares investment advisory fees charged to the Oakmark Funds by Harris to fees charged by Harris to other clients for other services. That too is an obvious non-starter under Section 36(b)'s pleading standards. Absent factual allegations that apples are really oranges, no logical conclusion of "disproportionality" in fees can be drawn by inapt comparisons. One simply cannot conclude that fees charged to these funds are too high for the services rendered to these funds simply because the Complaint alleges that different fees are charged to different clients for – from all that the Complaint alleges – different services.

For these reasons, the Complaint does not set forth a cognizable claim against Harris under Section 36(b). As set forth below, the Complaint should be dismissed.

## **BACKGROUND**

### 1. **The Parties**

The plaintiffs bring this action derivatively on behalf of four mutual funds – the Oakmark Fund, the Oakmark Equity and Income Fund, the Oakmark Global Fund, and the Oakmark

International Fund (collectively, the "Oakmark Funds"), which are a subset of The Oakmark Family of Funds advised by defendant Harris Associates L.P. ("Harris"). Each of the funds in The Oakmark Family of Funds is a series of Harris Associates Investment Trust, a Massachusetts business trust (the "Trust"). *See* Complaint ¶ 21. Defendant Harris is registered as an investment adviser under the Investment Advisers Act of 1940. *See* Complaint ¶ 22. Harris serves as an investment adviser to each of the Oakmark Funds pursuant to separate investment advisory agreements with each Fund. *See* Skinner Decl. Exh. B, p. 19.[2]

Plaintiffs Jerry N. Jones and Mary Frances Jones are shareholders of the Oakmark Equity and Income Fund and the Oakmark Global Fund. *See* Complaint ¶ 19. Plaintiff Olga Menyhart is a shareholder of the Oakmark Fund and the Oakmark International Fund. *See* Complaint ¶ 20.

2.    **The Investment Advisory Services and Fees**

As investment adviser, Harris provides continuing investment supervision to the Oakmark Funds and overall management of the Funds' business affairs. *See* Skinner Decl. Exh. B, p. 19. In addition to providing investment advice, Harris provides office space, equipment and personnel to the Oakmark Funds and assumes the expenses of printing and distributing the prospectus, profiles and reports to prospective investors. *Id.*

For its services as investment adviser, Harris receives a fee from each Fund, calculated as a percentage of that Fund's net assets at the end of the preceding month. The marginal percentage fee declines as the net assets of the Fund increase, pursuant to a publicly available schedule for each Fund, which is attached hereto as Schedule A *See* SAI at 19-20 (Skinner

---

[2]    In addition to the facts alleged in the Complaint, defendant relies on the Statement of Additional Information ("SAI") for the Oakmark Family of Funds, dated January 31, 2004 and updated February 11, 2004, relevant pages of which are attached to the Declaration of Robert A. Skinner, dated October 29, 2004 ("Skinner Decl."), as Exhibit B. In considering a motion to dismiss for failure to state a claim, the district court is entitled to consider documents central to the plaintiffs' claims, even if the documents are not themselves attached to the initial pleading. *See Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 546 n. 9 (8th Cir.1997).

Decl. Exh. B).

The advisory services and fees are set forth in the investment advisory agreement between Harris and each of the funds. As required by the ICA, each advisory agreement is reviewed and approved at least annually by the board of trustees of the Trust. As described in the SAI for the Oakmark Funds, a meeting of the board of trustees was held on October 21, 2003, called in part for the purpose of voting on the renewal of the advisory agreements. The trustees considered information about, among other things:

- Harris and its personnel (including particularly those personnel with responsibilities for providing services to the funds), resources and investment processes;
- the terms of each agreement;
- the scope and quality of services that Harris has been providing to the funds;
- the investment performance of each fund and of comparable funds managed by others over various periods;
- the advisory fee rates payable by each fund to Harris and by comparable funds managed by others;
- the total expense ratio of each fund and of comparable funds managed by others;
- the compensation payable by the funds to affiliates of Harris for other services;
- the profitability of Harris and its affiliates from their relationships with the funds; and
- Harris' use of the funds' portfolio brokerage transactions to obtain research benefiting the funds or other clients of Harris at a cost that may be in excess of the amount other brokers would charge.

SAI at 20-21 (Skinner Decl. Exh. B).

## ARGUMENT

I. **THE COMPLAINT FAILS TO ALLEGE FACTS SPECIFIC TO HARRIS AND THE OAKMARK FUNDS THAT MEET THE PLEADING STANDARD FOR A CLAIM OF EXCESSIVE FEES UNDER SECTION 36(b) OF THE ICA**

### A. The Pleading Standard For Section 36(b) Actions

Section 36(b) of the ICA imposes a statutory fiduciary duty on investment advisers in connection with the receipt of fees from the mutual funds they manage: "the investment adviser of a registered investment company [*i.e.*, a mutual fund] shall be deemed to have a fiduciary duty

Case 2:04-cv-04184-NKL   Document 31   Filed 11/01/04   Page 7 of 22

with respect to the receipt of compensation for services . . . paid by such registered investment company." ICA § 36(b). The statute further provides the funds' shareholders a right to bring a derivative action against the adviser, on behalf of the funds, for alleged breaches of that fiduciary duty in connection with the receipt of compensation.[3]

Section 36(b)'s jurisprudence is well developed. As the Complaint recognizes, the seminal case on Section 36(b) is the Second Circuit's decision in *Gartenberg v. Merrill Lynch Asset Management, Inc.*, 694 F.2d 923 (2d Cir. 1982). *See* Complaint ¶ 23. *Gartenberg* and its progeny apply the following test to assess liability under the statute: "To be guilty of a violation of § 36(b), therefore, the advisor-manager must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." *Gartenberg*, 694 F.2d at 928.

While *Gartenberg* sets disproportionality between fees paid and the value of services rendered as the touchstone for liability under Section 36(b), the decision does not articulate a pleading standard for Section 36(b) complaints. Rather, *Gartenberg* supplies a rubric for analyzing the disproportionality issue. The *Gartenberg* court described six "factors" that could be considered in determining whether a fee is so large that it bears no reasonable relationship to the services rendered: (i) the nature and quality of the services provided by the adviser to the shareholders; (ii) the profitability of the mutual fund to the adviser; (iii) fall-out benefits; (iv) economies of scale realized by the adviser; (v) comparative fee structures with similar funds;

---

3        In pertinent part, Section 36(b) provides:

> An action may be brought under this subsection by the Commission, or by a security holder of such registered investment company on behalf of such company, against such investment adviser . . . for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person.

and (vi) the independence and conscientiousness of the independent trustees. *Gartenberg*, 694 F.2d at 928-931. But these *Gartenberg* factors are not a pleading standard; they are an analytical tool for examining and testing well-pled facts. *Millenco L.P. v. Mevc Advisors, Inc.*, No. CIV. 02-142-JJF, 2002 WL 31051604, at *3, n.3 (D. Del. Aug. 21, 2002) (stating that *Gartenberg* is not a pleading standard). The mere invocation of the *Gartenberg* factors cannot substitute for the required factual allegations comparing specific fees for specific services. Otherwise there is no factual predicate for the required inference of disproportionality, nor is there a basis to infer an absence of good faith bargaining. *Yampolsky v. Morgan Stanley Inv. Advisers, Inc.*, No. 03 Civ. 5710 (RO); No. 03 Civ. 5896 (RO), 2004 WL 1065533, at *1-2 (S.D.N.Y. May 12, 2004) (dismissing Section 36(b) claims where plaintiffs "crafted their complaints" to track the *Gartenberg* factors).

Instead, the decisional law recognizes that, when it comes to pleading, disproportionality or the absence of arm's-length bargaining cannot exist in a vacuum. To make out a cognizable claim under section 36(b), then, a plaintiff must allege facts *specific* to Harris and the Oakmark Funds that establish that the advisory fees are so large that the link between Harris' fees and its services to the Funds is broken. Indeed, the disproportionality between fees and services must be so great that it compels the inference that the contractual arrangement *"could not"* have been the product of arm's-length bargaining; but that inference also depends upon fund- or adviser-specific facts. *See Millenco*, 2002 WL 31051604, *at *3*; *Migdal v. Rowe Price-Fleming Int'l., Inc.*, 248 F.3d 321, 327 (4th Cir. 2001) ("[A] plaintiff must allege facts that, if true, would support a claim that the fees at issue are excessive"); *Krantz v. Prudential Inv. Fund Mgmt. LLC*, 305 F.3d 140, 143 (3rd Cir. 2002) (finding dismissal under Rule 12(b)(6) appropriate where plaintiff "failed to allege any facts indicating that the fees received were disproportionate to services rendered"); *Yampolsky,* 2004 WL 1065533, at *2 (dismissing two similar complaints

Case 2:04-cv-04184-NKL   Document 31   Filed 11/01/04   Page 9 of 22

based on Section 36(b) that lack "any factual allegations as to the *actual* fee negotiations or management and distribution services rendered by *these* defendants").[4]

### B. Allegations Regarding The Industry As A Whole Are Insufficient to Establish Disproportionality Between Fees Charged and Services Rendered by *This* Adviser

The Complaint in this action cannot begin to satisfy this pleading standard, as it alleges virtually nothing about either (i) the services that Harris provided to the Oakmark Funds or (ii) the relationship between the value of services and the fees paid to Harris for them. Without such facts, the plaintiffs cannot hope to establish the disproportionality between fees and services that is the touchstone of a Section 36(b) claim, and they cannot conceive of persuading a factfinder that the fees were not bargained for at arm's length.

Indeed, most of the Complaint's factual allegations do not relate specifically to Harris and the Oakmark Funds at all. Instead, the pleading advances a broad critique of fees charged broadly in the mutual fund industry as a whole. *See* Complaint ¶¶ 15, 28, 30, 31, 32, 33, 36, 37, 46, 48, & *passim*. But generalized allegations about industry practices – untied as they are to any alleged conduct of *this* adviser defendant – cannot form the foundation for a claim against Harris. *See Yampolsky,* 2004 WL 1065533, at *2 (dismissing complaints based on Section 36(b) where the "pleadings rely heavily on generalities about deficiencies in the securities industry, and statements made by industry critics and insiders").

First, without specific allegations about Harris, there is no basis to conclude that, whatever infirmities ostensibly plague the mutual fund industry as a whole, those same problems

---

[4]     *See also Krantz*, 305 F.3d at 142-43 (3d Cir. 2002), quoting 5A CHARLES ALAN WRIGHT and ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 at 318 (2d ed. 1990) ("Although the pleading requirements . . . are very liberal, more detail is often required than the bald statement by plaintiff that he has a valid claim of some type against defendant."); *Lawline v. American Bar Ass'n*, 738 F. Supp. 288, 295 n. 7 (N.D. Ill. 1990) ("[P]laintiffs cannot file a Complaint merely to gain access to discovery with the hopes of later finding facts to support their otherwise insufficient allegations.").

Case 2:04-cv-04184-NKL   Document 31   Filed 11/01/04   Page 10 of 22

actually infect Harris and the Oakmark Funds. If *some* investment advisers have generated economies of scale that they have not passed on to their funds, or have derived "fall-out" benefits from advising multiple funds, that does not tend to establish that anything similar has occurred at Harris and the Oakmark Funds. Mere participation *in* the mutual fund industry does not prove anything about Harris' conduct as an industry participant.

Second, even if generalized allegations about the fund industry as a whole were acknowledged (against all logic), the plaintiffs' assumed conclusion that Harris behaved *consistently* with industry norms does not establish *excessiveness* under Section 36(b). It establishes the opposite. If in fact Harris charges fees for services rendered that are the same as or generally aligned with what other investment advisers charge for similar services, that compels the conclusion that its fees are proportionate to what the funds could otherwise obtain from a Harris competitor. By definition, fees that are the same as industry norms are not "disproportionately" large compared to the value of services rendered. *See Yampolsky*, 2004 WL 1065533, at *2; *Migdal*, 248 F.3d at 327 (dismissing under Rule 12(b)(6) a claim based on § 36(b) of the ICA where the complaint compares the funds' performance to three other in the industry but fail to "address the particular services offered by the defendants in this case").

At root, the Complaint's allegations about industry-wide behavior betray a subjective view about investment advisers and the fees they charge. It is evident that the plaintiffs view the industry's fees to be too large. But such subjective opinions self-evidently are not predicated upon the objective facts that are essential to a claim about Harris and the Oakmark Funds. And it is objective information – warranting an inference of disproportionality or bad faith bargaining in connection with Harris' fees to the Oakmark Funds – that are the essential ingredients of a Section 36(b) claim.

### C. The Complaint's Few Allegations Specific To Harris Are Insufficient To Raise an Inference of "Disproportionality" or the Absence of Arm's-Length Bargaining

The few facts alleged in the Complaint that do relate directly to Harris and the Oakmark Funds do not come close to satisfying the pleading standard for a 36(b) action, as they allege nothing about the services provided or the relationship between the value of those services and the fees paid by the Funds. The sum total of the Complaint's factual allegations specific to the fees charged by Harris is the following:

- The amount of the fee as a percentage of assets was slightly higher in 2003 (0.91%) than in 1993 (0.83%), although the Funds' asset base had increased, *see* Complaint ¶ 34; and

- The amount Harris charged the Oakmark Funds for its services as the Funds' adviser was more than the amount it charged other mutual funds for services rendered as those funds' *sub-adviser*, *see* Complaint ¶ 38.

With respect to the first of these allegations, an alleged increase over time in the *absolute* size of the fee as a percentage of the Fund assets under management tells us nothing about whether those fees were out of proportion to the services being compensated. There is nothing in the Complaint about how the fees grew during 1993-2003 *relative* to the quantity and nature of the services being provided during that period. Disproportion between fees and services can only be established with factual allegations regarding both sides of the equation, and the Complaint is notably silent about how the services being provided in 2003 compared to those being provided in 1993 (*e.g.*, what types of funds were being managed and the resources and expertise required to manage them).

The plaintiffs simplistically assert that an increase in the size of fees as a percentage of assets by itself demonstrates that Harris is failing to pass along supposed economies of scale that arise as funds grow in size. But that ignores the fee schedule that Harris actually charges the

Oakmark Funds, and the differences in that fee schedule negotiated since 1993. Among other things, the current schedule acknowledges the possibility of economies of scale by including "break points" at which the percentage fee *decreases* as fund assets *increase*. The Complaint neither acknowledges this fact nor makes any allegations as to why these diminishing fee schedules do not adequately account for the alleged economies of scale when considered in relation to the services provided. Simply put, even if the average fee charged in 2003 compared to 1993 is higher, in light of the "break point" schedule, the adverse inference that the plaintiffs attempt to invoke is flatly contradicted by the fees actually charged. The plaintiffs' comparison is simply inapt.

The plaintiffs' allegations that Harris charges less for its services as a *sub-adviser* pose a similarly inapt comparison. *See* Complaint ¶¶ 25-26, 38(a)-(c). Plaintiffs do not allege that the services provided by Harris as a sub-adviser are the same services that Harris provides as an investment adviser to the Oakmark Funds, nor can they. Indeed, the Fund document on which plaintiffs rely demonstrates clearly that Harris's role as the Funds' adviser involves general business management services extending well beyond pure investment management. With no basis to allege that the services under the sub-advisory arrangements match the breadth of the services provided to the Funds, the proffered comparison of advisory fees to sub-advisory fees is an apples-to-oranges comparison and legally irrelevant. *See Strougo v. BEA Assocs.*, 188 F. Supp. 2d. 373, 384 (S.D.N.Y. 2002) (granting summary judgment, holding "relevant comparison must be to other mutual funds, not to non-mutual fund institutional clients").

### D. Pleading Legal Conclusions Or Legal Standards Is Insufficient To Make Out a Cognizable Case Under Section 36(b)

Short on facts about Harris, the plaintiffs fill the Complaint with legal conclusions posing as facts about Harris. It is well settled that in analyzing the sufficiency of a Complaint, the Court

Case 2:04-cv-04184-NKL   Document 31   Filed 11/01/04   Page 13 of 22

should ignore "legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capital Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002); *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003). "Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition." *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999).

## 1. Conclusory Allegations of Excessiveness or Disproportionality Are Insufficient

The Section 36(b) case law is clear that the conclusory "facts" stated by the plaintiffs are inadequate to support a claim for liability. *See, e.g., Migdal*, 248 F.3d at 327; *Krantz*, 305 F.3d at 143 (finding dismissal under Rule 12(b)(6) appropriate where plaintiff "failed to allege any facts indicating that the fees received were disproportionate to the services rendered"); *Yampolsky*, 2004 WL 1065533, at *2 (dismissing Section 36(b) complaints lacking "any factual allegations as to the *actual* fee negotiations or management and distribution services rendered by *these* defendants"). Accordingly, plaintiffs' general averments of excessive fees are insufficient.

## 2. Recitation Of The *Gartenberg* "Factors" Is Insufficient

Much of the Complaint is devoted to a recitation of six "factors" that the *Gartenberg* court said could be considered in determining whether a fee is so disproportionately large that it bears no reasonable relationship to the services rendered. But mere invocation of the *Gartenberg* factors is legally insufficient to state a claim under Section 36(b). *See Yampolsky*, 2004 WL 1065533, at *2 ("While both complaints track the *Gartenberg* factors, nowhere does either complaint, in sum or substance, indicate how or why the fees are 'so disproportionately large that [they] bear[] no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining."). The *Gartenberg* factors are not a pleading standard; they

Case 2:04-cv-04184-NKL   Document 31   Filed 11/01/04   Page 14 of 22

are an analytical framework for analyzing well-pled facts.  *See Millenco*, 2002 WL 31051604, at

*3, n.3 (stating that *Gartenberg* is not a pleading standard).

Here, the Complaint's architecture is predicated upon *Gartenberg*.  The pleading recites

the *Gartenberg* factors and advances a series of assumptions, all asserted upon "information and

belief," regarding how Harris *must* have acted  if the document's pre-ordained conclusion of

disproportionality is to be accepted.  For example, under the heading "The Nature and Quality of

the Services Provided to the Funds," the plaintiffs allege "[o]n information and belief . . . the

nature of these services has remained unchanged despite dramatic growth in the assets of the

Funds."  Complaint ¶ 25.  The plaintiffs do not identify any basis – much less the required

reasonable basis – for their "information and belief."  Rather, they simply *assume* the services

have remained unchanged because that assumption is consistent with the pleading's pre-ordained

conclusion.  But that logic is suspiciously circular.

Similarly, under the heading "The Profitability of the Fund to the Adviser/Manager" the

Complaint states "upon information and belief, Defendant's reporting of its revenues and costs is

intended to, and does obfuscate Defendant's true profitability.  For instance, upon information

and belief, Defendant employs inaccurate accounting practices in its financial reporting,

including arbitrary and unreasonable cost allocations."  Complaint ¶ 28.  But that is the

meretricious posing as the meritorious.  The Complaint does not say how or why revenues and

costs are misreported; it supplies no basis for the defamatory allegation of "intention[al] . . .

obfuscat[ion]."  The pleading does not deign to describe any "inaccura[cy] in Harris' accounting

practices," and it does not set forth the details of any cost allocations that would make them out

as unreasonable, much less arbitrary.  The plaintiffs have not alleged any facts regarding how

Harris allegedly misstated its profits.   The absence of factual underpinning to these

unsubstantiated charges unmasks them as hollow attempts to shoehorn a conclusion into a

*Gartenberg* factor, rather than *facts* upon which to employ *Gartenberg's* "factors" to test the reasonableness of the funds' compensation to Harris.

The plaintiffs repeat the same ploy with other *Gartenberg* "factors." Regarding the "Fallout Benefits" *Gartenberg* factor, plaintiffs allege "on information and belief" that Harris has received "fall-out" benefits and then describes four categories of common "fall out" benefits, which it conclusorily alleges Harris received: "soft dollars," "kickbacks," benefits from securities lending arrangements, and the ability to sell investment advisory services paid by the Oakmark Funds at virtually no additional cost. (See Complaint ¶¶ 40-43.) But the pleading conspicuously omits any details about "soft dollar" arrangements between Harris and any third party, much less the background or circumstances of any "kickbacks." As with "intention[al] . . . obfuscate[ion]" of reported revenues and costs, one would imagine that if the plaintiffs truly had a good faith basis to accuse Harris of "kickbacks" or "improper accounting," the plaintiffs would not merely advance the conclusion under the veil of "information and belief," but would paint the factual bases for these allegations in neon colors. Their failure even to hint at the "information" that supports their "belief" speaks volumes about the Complaint's effort to invoke the *Gartenberg* factors, and suggests instead that these allegations are hip-shooting of the worst sort. The Complaint simply fails miserably to do anything other than invoke the 'factors' emptily – without facts that would justify using them as analytical tools to scrutinize Harris' fees to the Oakmark Funds.

The plaintiffs' allegations about the Oakmark Funds' trustees who negotiated the advisory contract with Harris are equally devoid of factual underpinning. Notwithstanding the statutory definition of "disinterested" and the ICA's presumption that disinterested directors are in fact independent, plaintiffs make the broad allegation "on information and belief" that "[a]s part of their scheme to receive excessive fees, Defendant did not keep the directors fully

KC01 706672.1

- 13 -

informed regarding all material facts and aspects of its fees and other compensation, and the directors failed to insist upon adequate information." Complaint ¶ 49. Plaintiffs do not plead any basis for their assertions that Harris misled the board and that the board was not conscientious in its duties; their "facts" are derived solely from their hypothesis that the fees were disproportionate.[5] For each of the *Gartenberg* factors, the analysis is the same. The plaintiffs begin with the hypothesis that the fees are disproportional and then allege "on information and belief" a conclusory allegation that is consistent with their own assumption. That kind of bootstrapping is insufficient as a matter of law.

## II. THE COMPLAINT'S CLAIM TO AN "EXCESS PROFITS" REMEDY AND TO RESCISSION OF THE CONTRACT SHOULD BE STRICKEN BECAUSE THEY ARE NOT PROVIDED FOR BY SECTION 36(b)

In addition to the Complaint's shortcomings set forth in Point I above, Count II of the Complaint should be dismissed for the independent reason that it seeks recovery on a theory of liability that does not exist under Section 36(b) of the ICA. While Count I asserts that Harris violated the statute by charging excessive fees "disproportionate to the services rendered," Count II instead avers that Harris "has received and continues to receive *excess profits* attributable to extraordinary economies of scale." Complaint ¶ 57 (emphasis added).

Section 36(b) provides a cause of action for excessive fees, but not for "excess profits." As discussed above, the statute is violated only where fees are so disproportionate to services rendered that they could not have been bargained at arm's length. Nowhere does the statute or case law refer to an action based on the impact of such payments on the adviser's bottom line. Indeed, as a matter of common sense and economic reality, there is no necessary connection

---

[5] In fact, the SAI contradicts plaintiffs' vague assertions and indicates that the trustees did consider the very kinds of information that would be relevant to a determination of the proportionality of Harris's fees. SAI at 20-21 (Skinner Decl. Exh. B).

between "excessive fees" under the statute – *i.e.*, fees disproportionate to the services rendered – and the adviser's profits. The adviser's profits will be determined by a number of variables, many of which will have nothing to do with whether the advisory fees charged were proportionate to the services rendered in connection with those fees. Harris respectfully requests that the Court dismiss Count II for the independently sufficient reason that there is no "excess profits" cause of action under Section 36(b).

Similarly, in both Counts I and II, the plaintiffs purport to seek an order declaring the advisory agreements between the Funds and Harris "void ab initio." *See* Complaint ¶ 59. This prayer for relief should be stricken. Section 36(b) expressly delimits the form of relief available to shareholder plaintiffs – "the actual damages resulting from the breach of fiduciary duty," recoverable for a period of one year preceding the filing of an action. *See* ICA § 36(b)(3). Nowhere does the statute provide for the much broader relief of rescission of the advisory agreements or a declaration that the agreements were "void ab initio." By including this request, the plaintiffs apparently seek to extend the reach of the money damages they might recover beyond the one-year period provided by statute. There is no legal basis for such a maneuver, and this prayer for relief should be stricken from the Complaint. *See Green v. Fund Asset Mgmt., L.P.*, 286 F.3d 682, 685 (3d Cir. 2002) ("§ 36(b) was intended to provide a very specific, narrow federal remedy . . . . [U]nder § 36(b), a shareholder may only sue the recipient of the fees; recovery is limited to *actual* damages resulting from the breach; and damages are not recoverable for any period prior to one year before the action was instituted."(citation omitted) (emphasis added).

## CONCLUSION

For all of the foregoing reasons, the plaintiffs' Complaint should be dismissed in its entirety.

Respectfully submitted,

**BRYAN CAVE LLP**

By:/s/ Fred L. Sgroi
    Lynn S. McCreary       MO #46629
    Fred L. Sgroi          MO #35146
    1200 Main Street, Suite 3500
    Kansas City, MO 64105
    (816) 374-3200 telephone
    (816) 374-3300 facsimile

**ROPES AND GRAY LLP**

    John D. Donovan, Jr.
    Robert A. Skinner
    Roseanne E. Felicello
    One International Place
    Boston, MA 02110-2624
    (617) 951-7000 telephone
    (617) 951-7050 facsimile

    ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 1, 2004, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Wm. Dirk Vandever
The Popham Law Firm, PC
323 W. 8th Street
Suite 200
Kansas City, MO 64105

Becky Ferrell-Anton
Johnson, Pope, Bokor, Ruppel & Burns, LLP
100 North Tampa Street
Suite 1800
P. O. Box 1100
Tampa, FL 33601-1100

Nina H. Fields
Richardson, Patrick, Westbrook & Brickman, LLC
174 East Bay Street
Suite 100
Charleston, NC 29401

I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

James C Bradley
Michael J. Brickman
Richardson, Patrick, Westbrook & Brickman, LLC
174 East Bay Street
Suite 100
Charleston, SC 29401

Guy M. Burns
Jonathan S. Coleman
Audrey B. Rauchway
Johnson, Pope, Bokor, Ruppel & Burns, LLP
100 N. Tampa Street
Suite 1800
P.O. Box 1100
Tampa, FL 33601-1100

Timothy L. Sifers, Esq.
The Bertram Law Office, LLC
9229 Ward Parkway, Suite 107
Kansas City, MO   64114

/s/ Fred L. Sgroi
Attorney for Defendant

## <u>SCHEDULE A</u>

Following are the advisory fees schedules for the Oakmark Funds at issue in the Complaint, effective as of the filing of the Complaint. *See* SAI at 19-20 (Skinner Decl. Exh. B).[*]

| Net Daily Assets | Advisory Fee as a % of Assets |
|---|---|
| **Oakmark Fund** | |
| Up to $2 billion | 1.00% |
| $2 billion - $3 billion | 0.90% |
| $3 billion - $5 billion | 0.80% |
| Over $5 billion | 0.75% |
| **Oakmark Equity and Income Fund** | |
| Up to $5 billion | 0.75% |
| $5 billion - $7.5 billion | 0.70% |
| $7.5 billion - $10 billion | 0.675% |
| Over $10 billion | 0.65% |
| **Oakmark Global Fund** | |
| Up to $2 billion | 1.00% |
| $2 billion - $4 billion | 0.95% |
| Over $4 billion | 0.90% |
| **Oakmark International Fund** | |
| Up to $2 billion | 1.00% |
| $2 billion - $3 billion | 0.95% |
| Over $3 billion | 0.85% |

---

[*]     At a meeting on October 28, 2004, the trustees approved modest revisions to these fee schedules effective November 1, 2004. The revised schedules continue to feature a declining marginal fee as assets grow. Because these revised schedules are not yet a matter of public record and were not in effect at the time of the filing of the Complaint, Harris does not intend to make these facts part of the current motion.